IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA HARVEY, as administrator for The Estate of Anthony Harvey, *et al.*, | : |
| Plaintiffs, | : |
| v. | :    CA 15-00641-C |
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, | : |
| Defendant. | : |

### MEMORANDUM OPINION AND ORDER

On May 19, 2016, this matter came on for oral argument (the "Oral Argument") on the Acceptance Indemnity Insurance Company's Motion for Summary Judgment (the "Motion for Summary Judgment") (Doc. 20) filed by Defendant Acceptance Indemnity Insurance Company ("Acceptance"). In this case, the parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 17).[1] Upon consideration of the Parties' briefs and oral arguments, the Court finds that the Motion for Summary Judgment is due to be **GRANTED**.

### FINDINGS OF FACT

The Plaintiffs filed this action under Ala. Code § 27-23-2 to "garnish" the liability coverage under an insurance policy issued by Acceptance to Pete & Toney's Inc. d/b/a

---

[1] Accordingly, any appeal from this Opinion and accompanying judgment must be taken directly to the Eleventh Circuit Court of Appeals. (*See* Doc. 17 ("An appeal from a judgment entered by a Magistrate Judge may be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.")).

Paradise Lounge ("Paradise Lounge").² The insurance policy, number CP00042291 (the "Policy") (Doc. 21-2), was effective from January 30, 2010 to January 30, 2011. (Doc. 21-2 at 4). On December 10, 2010,³ Jerry Dwayne Bohannon, along with his wife and a friend, Wade Brown, went out for the evening to Paradise Lounge, which is located in Mobile County, Alabama. (Doc. 21 at 32). Bohannon and the others then visited other bars, but returned to Paradise Lounge around 2:00 a.m. on the morning of December 11, 2010 and drank beer. (*Id.*). According to one of the waitresses at Paradise Lounge, Bohannon asked her to get him some methamphetamine, which she was unable or unwilling to do. (*Id.* at 33). Another waitress stated that Bohannon called her over and told her "if something happens here tonight, it is not your fault." (*Id.*).

Jerry DuBoise and Anthony Harvey arrived at Paradise Lounge between 1:30 a.m. and 2:00 a.m. on December 11, 2010. (*Id.* at 33). One of the waitresses also stated that neither DuBoise nor Harvey appeared impaired that night. (*Id.*). Further, none of the occupants of the Paradise Lounge witnessed any contact between Bohannon, Harvey or DuBoise prior to the events at approximately 7:30 a.m. when DuBoise and Harvey exited the Paradise Lounge. (*Id.*). Upon exiting, Harvey walked over to their car and began examining the wheel well. (*Id.*). Bohannon also came outside and began a conversation with DuBoise. (*Id.* at 33-34). The conversation was captured on three video

---

² As explained in more detail later in this Opinion, Ala. Code § 27-23-2 allows a plaintiff who has recovered a judgment against an insured-defendant to file a post-judgment action against the insured-defendant's carrier to apply the liability proceeds of the insured's policy toward the judgment. *Maness v. Ala. Farm Bur. Mut. Cas. Ins. Co.*, 416 So.2d 979, 981-82 (Ala. 1982), *not followed on other grounds by Woodall v. Alfa Mut. Ins. Co.*, 658 S.2d 369, 373 (Ala. 1995). Here, the Parties stipulated that it was not necessary to join Paradise Lounge in this Action to adjudicate the Plaintiffs' Ala. Code § 27-23-2 claim.

³ There is no dispute about the events occurring the night of December 11, 2010 and the early morning of December 12, 2010.

cameras, but no audio was recorded. (*Id.* at 34). As the conversation between DuBoise and Bohannon ended, DuBoise pushed Bohannon slightly while gesturing at Bohannon to leave. (*Id.*). Harvey walked from the car toward Bohannon and DuBoise, starting an additional conversation. (*Id.*). Harvey and DuBoise then turned to leave Bohannon, but as they took a few steps, Bohannon produced a .357 Ruger revolver pistol. (*Id.*).

After noticing that Bohannon was pointing a revolver at them, Harvey and DuBoise ran around the Paradise Lounge to a fenced-in corner. (*Id.*). Harvey and DuBoise then hid in a cutout in the building and produced two guns of their own. (*Id.*). A gunfight ensued as Bohannon shot toward Harvey and DuBoise and fire was returned toward Bohannon. (*Id.*). To fire the .357 revolver, Bohannon had to "manually cock the hammer each time before pulling the trigger." (*Id.*). Bohannon shot Harvey a single time in the upper left chest as Harvey ran from the cutout. (*Id.*). Bohannon shot DuBoise three times after DuBoise left the cover of the cutout: once in the liver, once in the stomach and kidney, and once in the lung and heart. (*Id.* at 35). Bohannon also caused both Harvey and DuBoise skull trauma when he beat them as they were lying on the ground dying. (*Id.* at 34-35). Harvey had what appeared to be a shoe print on his face. (*Id.*). Bohannon pistol-whipped DuBoise with the butt-end of the Ruger so severely that the revolver broke, Duboise's teeth dislodged from his mouth, and Duboise's skull fractured. (*Id.* at 35).

As the police arrived, Bohannon stood in the parking lot holding the .357 Ruger with the barrel down while his wife begged the police not to shoot him. (*Id.* at 36). Officers arrested Bohannon and transported him to the Prichard, Alabama Police Station. (*Id.*). As officers placed Bohannon in the police cruiser to be transported to jail, he said, "they owed me money — this ought to be self-defense." (*Id.* at 36-37).

3

The prosecutors charged Bohannon with capital murder under Ala. Code § 13A-5-40(a)(10) following the incident at Paradise Lounge. (*Id.* at 29). A jury found beyond a reasonable doubt that Bohannon murdered Harvey and DuBoise. (*Id.*). The jury recommended by an 11-1 vote that Bohannon be put to death by lethal injection. (*Id.* at 30). Agreeing with the jury, the trial court sentenced Bohannon accordingly. (*Id.* at 44). Bohannon appealed, but the Alabama Court of Criminal Appeals affirmed his death sentence. (*See id.* at 70-71).

During the pendency of Bohannon's criminal trial, the Plaintiffs each filed an action against Paradise Lounge in the Circuit Court of Mobile County, Alabama (the "Circuit Court") alleging liability under Alabama's dram shop and wrongful death statutes: *Jerry DuBoise, Sr., individually and as Administrator for the Estate of Jerry DuBoise, Jr., et al. v. Petey & Tony, Inc. d/b/a Paradise Lounge, et al.*, Civil Action No. CV-2012-902606 and *Sandra Harvey, individually and as Administrator for the Estate of Anthony Harvey and Lloyd Brandon Harvey v. Petey & Tony, Inc. d/b/a Paradise Lounge, Inc., et al.*, Civil Action No. CV-2012-902572. (*See* Docs. 21 at 15-24 & 32-2). The cases were consolidated, and the Plaintiffs were awarded judgments against Paradise Lounge in the amount of $500,000.00 each. (the "Circuit Court Judgments") (*See* Docs. 21 at 26-27 & 32-3). The Plaintiffs then filled this action in the Circuit Court under Ala. Code § 27-23-2 in an attempt to recover the Circuit Court Judgments under the Policy. (*See* Doc. 1 at 7-9). The action was subsequently removed to this Court on December 17, 2015. (*See* Doc. 1). Acceptance filed the Motion for Summary Judgment on March 25, 2016.

## CONCLUSIONS OF LAW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

4

("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant[s] to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, 495 F.3d at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.) (citations omitted), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Comer*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether the Acceptance is entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the Plaintiffs. *Comer*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made

based upon the materials before it on summary judgment." *Resolution Trust Corp.*, 43 F.3d at 599. Accordingly, the Court limits its review to those arguments expressly advanced by the Parties.

As previously mentioned, Ala. Code § 27-23-2 allows a plaintiff who has recovered a judgment against an insured-defendant to file a post-judgment action against the insured-defendant's carrier to apply the liability proceeds of the insured's policy toward the judgment. *See supra* note 2. Further, the carrier retains all coverage defenses to the "garnishment" action that it would have had against the insured. *Admiral Ins. Co. v. Price-Williams*, 129 So.3d 991, 997 (Ala. 2013) (citing *Haston v. Transamerica Ins. Servs.*, 662 So.2d 1138, 1139-40 (Ala. 1995). Here, Acceptance argues that the Plaintiffs cannot recover under Ala. Code § 27-23-2 because the claims that form the basis of the Circuit Court Judgments are excluded under the Policy. The Plaintiffs, on the other hand, argue that the underlying Circuit Court claims are covered under the Policy. Upon review of the Policy, the Court finds that the Plaintiffs' claims that underlie the Circuit Court Judgments are excluded under the terms of the Policy and, thus, are not recoverable by the Plaintiffs against Acceptance under Ala. Code § 27-23-2.

There is no dispute regarding the validity of the Policy itself. Instead, the Parties disagree about how the Policy should be read. The Policy contains three types of coverage: (1) general liability coverage; (2) property coverage; and (3) liquor liability coverage. (*See* Doc. 21-2 at 4). At Oral Argument, the Parties agreed that the liquor liability coverage part of the Policy is the only portion applicable to the Plaintiffs' underlying Circuit Court claims. The Policy also contains an exclusion (the "Assault and Battery Exclusion") (*Id.* at 10) that provides, "This insurance does not apply to . . . [a]ny claims arising out of Assault and/or Battery." Insurance policies, like other contracts, are to be applied according to their clear and unambiguous terms. *Twin City*

*Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 691-92 (Ala. 2001); *Gregory v. W. World Ins. Co.*, 481 So.2d 878, 881 (Ala. 1985). Here, the Court finds that the Assault and Battery Exclusion is plain and enforceable. *See Montpelier U.S. Ins. Co. v. Hubbard*, No. 1:13-cv-1956-TMP, 2015 WL 996598 at *4 (N.D. Ala. Mar. 6, 2015) (concluding that an insurance policy, which excluded from coverage "'bodily injury,' 'personal injury,' or 'property damage' arising out of an assault and/or battery," was unambiguous and enforceable). Although the Plaintiffs argue that the Assault and Battery Exclusion does not apply to the liquor liability coverage part of the Policy, the Court concludes that the clear and unambiguous terms of the Policy establish that the Assault and Battery Exclusion applies to all coverage parts of the Policy, including the liquor liability coverage.

First, the policy declarations show the Assault and Battery Exclusion applies to all coverages. Specifically, the Policy's "SCHEDULE OF FORMS AND ENDORSEMENTS," which identifies which forms and endorsements apply to which parts of the Policy, lists the Assault and Battery Exclusion under the "Forms Applicable - Multiple Lines of Business" heading along with other endorsements typically applicable to an entire insurance policy, such as "Service of Suit," "Calculation of Premium," and "Common Policy Conditions." (Doc. 21-2 at 5). If the exclusion was applicable to the general liability coverage part of the Policy only, as the Plaintiffs contend, the endorsement would almost certainly appear under the "Forms Applicable - General Liability" heading section, not the multi-lines section.[4]

---

[4] Additionally, the Assault and Battery Exclusion in the Policy physically comes before the declaration pages of any specific coverage part (e.g. general liability, property, and liquor). This is true for all other Policy forms and endorsements listed under the "Forms Applicable - Multiple Lines of Business" heading.

Second, unlike several other endorsements in the Policy, the Assault and Battery Exclusion does not contain language limiting its applicability to specific parts of the policy. For example, the "EMPLOYMENT-RELATED PRACTICES EXCLUSION" endorsement provides, "This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILTY COVERGE PART." (Doc. 21-2 at 45). The Assault and Battery Exclusion contains no such limitation. Instead, it only states, "This endorsement changes the policy." (Doc. 21-2 at 10). For these reasons, the Court finds that the terms of the Policy clearly and unambiguously establish that the Assault and Battery Exclusion applies to the liquor liability coverage part.

Having determined that the Assault and Battery Exclusion applies to the liquor liability portion of the Policy, the Court must now determine whether the exclusion applies to the Plaintiffs' underlying Circuit Court claims. At Oral Argument, the Parties agreed that the portion of the exclusion relevant to this matter is subsection A, which provides that the Policy does not apply to "[a]ny claims arising out of Assault and/or Battery." (Doc. 21-2 at 10). Upon consideration, the Court finds that the Plaintiffs' claims in the underlying Circuit Court actions do "arise[] out of Assault and/or Battery" and, thus, the Assault and Battery Exclusion precludes coverage for such claims.

In *Robinson v. Hudson Specialty Insurance Group*, 984 F. Supp. 2d 1199, 1209 (S.D. Ala. 2013), a judgment plaintiff sued the insurers of a nightclub under Ala. Code § 27-23-2 to recover a $500,000.00 judgment resulting from being shot by two unknown gunmen as he left the club. The underlying judgment was rendered in favor of the plaintiff and against the owner of the club for negligence and dram shop liability. *Robinson*, 984 F. Supp. 2d at 1202. In the suit against the insurers, the plaintiff argued that the club owner's negligent acts led directly to him being intentionally shot. *Id.* at 1204. In attempting to collect the judgment under the club owner's insurance policies,

9

the plaintiff argued that the claims upon which the judgment was rendered (negligence and the Alabama Dram Shop Act) were covered under the policies. The insurers argued that the claims were excluded under assault and battery exclusions contained in the policies. Particularly relevant to this matter, one of the insurers' liquor liability policy contained the following exclusion: "This insurance does not apply to claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees." *Id.* at 1207. In that case, this Court found that the plaintiff's underlying negligence claim arose out of the assault and battery, reasoning that "but for the assault/battery (the shooting), [plaintiff] would have no negligence claim because he would have had no injury." *Id*. at 1208. Since the plaintiff's injuries could not be severed and allocated to different causes and his negligence/dram shop claims were inextricably tied with the assault and battery, this Court held that the assault and battery exclusion precluded coverage under the policy. *Id*.

The underlying Circuit Court claims against Paradise Lounge are excluded under the Policy for the same reasons: they arise from, and are inextricably tied to, Bohannon's assault and battery (murder) which caused DuBoise and Harvey's injuries. "[B]ut for the assault/battery (the shooting[s])," the adminstrators of DuBoise and Harvey's estates would have no claims because DuBoise and Harvey would have had no injuries, just as the *Robinson* plaintiff would have had no injuries had he not been shot. *Id*. at 1208; *accord Montpelier U.S. Ins. Co.*, 2015 WL 996598 at *4 (holding that a policy exclusion for injuries or damages "arising out of assault and/or battery" applied even though the plaintiff alleged antecedent acts of negligence or wantonness in failing to prevent or suppress an attack by another person). Regardless of how the Plaintiffs framed their claims in the underlying Circuit Court actions against Paradise Lounge

(wrongful death, dram shop liability, etc.), their claims arise out of an assault and/or battery (the shooting deaths of DuBoise and Harvey). Thus, the claims are excluded under the Policy and are not recoverable from Acceptance under Ala. Code § 27-23-2. Consequently, the Motion for Summary Judgment is hereby **GRANTED**.

## CONCLUSION

For the reasons set forth above, Acceptance's Motion for Summary Judgment (Doc. 20) is **GRANTED**. Therefore, the Plaintiffs' claim set forth in the complaint (Doc. 1 at 7-9) is **DISMISSED WITH PREJUDICE**.

**DONE** this the 20th day of July 2016.

s/WILLIAM E. CASSADY<br>
**UNITED STATES MAGISTRATE JUDGE**